UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
JAMES RAMBERT, ANGELA RAMBERT,
AND CAMILLE RAMBERT,

                      Plaintiff,                  **MEMORANDUM & ORDER**
                                                  18-CV-3541 (PKC) (LB)

      - against -

REVERSE MORTGAGE SOLUTIONS, INC.,

                      Defendant.
----------------------------------------------------------x
PAMELA K. CHEN, United States District Judge:

      *Pro se* Plaintiffs James Rambert, Angela Rambert, and Camille Rambert bring this action against Defendant Reverse Mortgage Solutions, Inc. ("RMS") alleging fraud. Before the Court is Defendant RMS's motion to dismiss this matter as barred by the Chapter 11 plan that covers RMS. For the reasons set forth below, Defendant's motion is granted.

## BACKGROUND

      Plaintiffs originally filed this case in Kings County Supreme Court, and Defendant removed it to this Court based on diversity jurisdiction on June 18, 2018. (*See* Notice of Removal, Dkt. 1, at ¶¶ 4–5.) Plaintiffs allege that Defendant induced Plaintiff James Rambert to enter into what he "was told would be a reverse mortgage contract" with Defendant, but was instead a conventional loan. (Complaint ("Compl."), Dkt. 1-2, ¶ 4.) Defendant moved to dismiss the complaint on November 2, 2018 (Dkt. 16)[1], and this Court referred Defendant's motion to the Honorable Lois Bloom, Magistrate Judge, for a Report and Recommendation ("R&R"). Judge

---

[1] This motion to dismiss preceded the motion at issue in this Memorandum & Order.

1

Bloom issued her R&R on March 4, 2019, recommending that the complaint be dismissed in its entirety.[2]  (*See* Dkt. 24, at 16.)

On March 6, 2019, before any objections to the R&R were filed, Defendant filed a Notice of Bankruptcy, indicating that on February 11, 2019, Ditech Holding Corporation and its debtor affiliates, including Defendant, had filed a voluntary petition for relief under Chapter 11 in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").[3] (*See* Dkt. 25, at 1.)  An automatic stay was imposed in this case based on the pending bankruptcy proceeding.  (*See* 03/06/19 Order.)

On March 13, 2020, Defendant filed a letter with the court claiming that Plaintiffs' claims were barred by the Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors (the "Plan"), which had been confirmed by the Bankruptcy Court on September 26, 2019.  (*See* Dkt. 29.)  As part of the Plan, the sale of RMS closed on September 30, 2019.  (*Id.*)  The Court construed Defendant's letter as a motion to dismiss and set an expedited briefing schedule.  (03/16/20 Order.)  On March 19, 2020, the Court also terminated Defendant's previous motion to dismiss and Judge Bloom's R&R.  (03/19/20 Order.)  Defendant filed a supplemental letter in support of its motion to dismiss attaching the Plan on April 22, 2020 (Dkt. 30), to which

---

[2] The R&R recommended dismissal of this action as time-barred and based on the complaint's failure to state a claim either for fraud or predatory lending.  (*Id.*)  The R&R also recommended dismissal of Angela and Camille Rambert as plaintiffs for lack of standing.  (*Id.* at 6–7.)

[3] On January 31, 2020, Defendant submitted a letter to Judge Bloom, notifying her and Plaintiffs about the Chapter 11 proceedings and requesting that Plaintiffs discontinue their claims against RMS.  (Dkt. 27.)  On February 7, 2020, the Court issued an order directing Plaintiffs to advise the Court whether they were agreeing to dismiss their action, and, if not, to explain why they believed their case should be allowed to proceed.  (*See* 02/07/20 Order.)  After Plaintiffs failed to respond, the Court construed their silence as indicating that they did not oppose dismissal, and directed Defendant to advise the Court about the mechanism for dismissing this action, which resulted in Defendant's filing of the March 13, 2020 letter, discussed *infra*.  (*See* 03/04/20 Order.)

Plaintiffs did not respond. The Court held oral argument on the motion to dismiss on May 26, 2020.

For the reasons articulated at the hearing on May 26, 2020 and discussed further below, the Court grants Defendant's motion to dismiss, which it construes as a motion under Federal Rule of Civil Procedure ("FRCP") 12(b)(6), and dismisses Plaintiffs' Complaint in its entirety.

## STANDARD OF REVIEW

In order to survive a motion to dismiss pursuant to FRCP 12(b)(6), "a complaint must contain sufficient factual allegations, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal citation omitted). Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (internal citation omitted). "In addressing the sufficiency of a complaint, [the Court] accept[s] as true all factual allegations and draw[s] from them all reasonable inferences; but [the Court is] not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013).

## DISCUSSION

As laid out below, the Court finds that Plaintiffs' claims must be dismissed under Section 4.6(b) of the Plan. In the alternative, the Court finds that the claims are discharged by Sections 10.3 and 10.5.

**I.       Considering the Plan on a Rule 12(b)(6) Motion to Dismiss**

As an initial matter, the Court notes that it may, as multiple courts in this circuit have already, consider the Plan as submitted by Defendant on a motion to dismiss under FRCP 12(b)(6). *See, e.g.*, *Mohammed v. Great Atl. & Pac. Tea Co., Inc.*, No. 13-CV-2248 (TPG), 2014 WL 4058708, at *1–5 (S.D.N.Y. Aug. 15, 2014), *aff'd*, 607 F. App'x 77 (2d Cir. 2015) (considering terms of reorganization plan submitted by defendant); *Gilbert v. N. Am. Airlines*, No. 12-CV-523 (KAM) (JMA), 2014 WL 1271057, at *3–4 (E.D.N.Y. Mar. 26, 2014) (same). Generally, "[i]n a bankruptcy-related proceeding, the terms of a confirmed plan of reorganization are binding on parties to the plan and should be considered by a court when deciding a motion to dismiss." *Adelphia Recovery Tr. v. Bank of Am., N.A.* 390 B.R. 80, 88 (S.D.N.Y. 2008), *aff'd*, 379 F. App'x 10 (2d Cir.2010)). The instant case is a "bankruptcy-related" proceeding because "[t]he Second Circuit applies the broad test for 'related to' jurisdiction articulated by the Third Circuit in *In re Pacor, Inc.*" *In re Ames Dep't Stores, Inc.*, 542 B.R. 121, 136 (S.D.N.Y. 2015) (citing *In re Pacor, Inc. v. Higgins,* 743 F.2d 984 (3d Cir.1984)). The *Pacor* test involves examining:

> Whether the outcome of [a civil] proceeding could conceivably have any effect on the estate being administered in bankruptcy . . . An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and [] in any way impacts upon the handling and administration of the bankrupt estate.

*Id.* (citing *Pacor,* 743 F.2d at 994). It is clear that the outcome of this case, in which Plaintiffs seek compensatory and punitive damages in the amount of $3,600,000.00 (Compl., Dkt. 1-2, at 4),

could have an effect on the estate being administered in bankruptcy, and thus that the terms of the Plan are relevant and binding.

## II. Section 4.6 of the Plan

As a general matter, 11 U.S.C. § 1141(d)(1) provides that a bankruptcy court's confirmation of a reorganization plan under Chapter 11 "discharges the debtor from any debt that arose before the date of the confirmation, regardless of whether proof of the debt is filed, the claim is disallowed, or the plan is accepted by the holder of the claim." *Gilbert*, 2014 WL 1271057, at *6 (citing 11 U.S.C. § 1141(d)(1)(A)). Thus, to the extent that Plaintiffs' claims[4] were not addressed by the Plan, they would be discharged under Section 1141 of the Bankruptcy Code.

Here, however, there is no need to rely on Section 1141, as under Section 4.6 of the Plan, holders of claims like the one at issue are enjoined from prosecuting those claims against Defendant. Section 4.6 provides that:

> Each holder of a Consumer Creditor Claim . . . shall be enjoined from bringing, asserting or prosecuting such Consumer Creditor Claim against . . . Reorganized RMS[5] . . . except as provided in Section 5.6(d)(iii)[6], or seeking monetary damages from . . . Reorganized RMS . . . on account of such Consumer Creditor Claim, except that nothing in the Plan or Confirmation Order shall affect a Borrower's defenses or rights of recoupment under applicable nonbankruptcy law; provided, that notwithstanding anything contained in the Plan or the Confirmation Order to the contrary, application of those defenses and rights of recoupment shall not require the . . . Reorganized RMS. . . to pay money damages to, refund amounts

---

[4] "Claims" are defined in the Plan as having the meaning set forth in Section 101(5) of the Bankruptcy Code (Plan, Dkt. 30-1, § 1.29), which defines a "claim" as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5)(A).

[5] As defined by Section 1.152, "Reorganized RMS" means, "with respect to the Sale Transaction, RMS, as reorganized pursuant to and under the Plan on or after the Effective Date." (Plan, Dkt. 30-1, at § 1.152.)

[6] Section 5.3(d) deals with a Borrower's ability to correct inaccurate terms or servicing of his loan. (Plan, Dkt. 30-1, § 5.3(d).)

5

>   paid by, or pay monies (except escrow advances) on behalf of or for the account of, a Borrower.

(Plan, Dkt. 30-1, § 4.6(b).) Consumer Creditor Claims are defined under the Plan as "[c]laim[s] asserted by a Borrower against the Debtors[7] including a 363(o) Claim." (Plan, Dkt. 30-1, § 1.36.)

Plaintiff James Rambert, who alleges that he entered into a mortgage or reverse mortgage with Defendant (*see* Compl., Dkt. 1-2, ¶¶ 4, 6), meets the definition of a Borrower under Section 1.23.  (*See* Plan, Dkt. 30-1, § 1.23.)  As such, his claim is a Consumer Creditor Claim, and he is barred from prosecuting it against Defendant under the Plan.[8]  (*Id.* § 4.6(b)); *see also In re Ditech Holding Corp.*, 606 B.R. 544, 550–51 (Bankr. S.D.N.Y. 2019) (contemplating the type of claim at issue here as a "Consumer Creditor Claim").

### III. Sections 10.3 and 10.5 of the Plan

To the extent that Plaintiffs' claims are not addressed by Section 4.6 of the Plan, the Court finds that they are barred by Sections 10.3 and 10.5 of the Plan. Section 10.3(a) of the Plan provides that:

>   except as otherwise expressly provided under the Plan, each holder (as well as any representatives, trustees, or agents on behalf of each holder) of a Claim or Interest . . . shall be deemed to have forever waived, released, and discharged the Debtors,

---

[7] RMS is a Debtor under the Plan, and a "Borrower" is defined as "any individual, as of the Commencement Date, whose current or former mortgage loan or reverse mortgage was originated, serviced, sold, consolidated, or owned by any of the Debtors." (Plan, Dkt. 30-1, at 1, § 1.23.)

[8] Though Defendant's letter motion to dismiss does not address this issue, the Court also holds that, as found by Judge Bloom in her R&R, Plaintiffs Angela and Camille Rambert lack standing to bring the instant action. (*See* R&R, Dkt. 24, at 6–7.) Plaintiffs Angela and Camille Rambert are not parties to the mortgage agreement at issue, and, as laypeople, may not represent their father's interests in court. *See Armatas v. Maroulleti*, 484 F. App'x 576, 577 (2d Cir. 2012) (summary order) ("28 U.S.C. § 1654 . . . does not permit unlicensed laymen to represent anyone else other than themselves") (internal quotation omitted) (finding that parents could not represent their children in court); *Ocampo v. JP Morgan Chase Bank, N.A..* 93 F. Supp. 3d 109, 117 (E.D.N.Y. 2015) (plaintiffs who were not parties to the mortgage loans or assignments do not have standing to enforce the agreements) (collecting cases).

6

> to the fullest extent permitted by section 1141 of the Bankruptcy Code, of and from any and all Claims, Interest, rights, and liabilities that arose prior to the Effective Date.[9]  Upon the Effective Date, such Entities shall be forever precluded and enjoined, pursuant to section 524 of the Bankruptcy Code, from prosecuting or asserting any such discharged Claim against or terminated Interest in the Debtors against the Debtors, the Reorganized Debtors, or any of their Assets or property, whether or not such holder has filed a proof of Claim and whether or not the facts or legal bases therefor were known or existed prior to the Effective Date.

(Plan, Dkt. 30-1, § 10.3(a).)  Section 10.5 of the Plan further provides that:

> (a) Upon entry of the Confirmation Order[10], all holders of Claims and Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan in relation to any Claim extinguished, discharged, or released pursuant to the Plan.
>
> (b) Except as expressly provided in the Plan. . .  all Entities who have held, hold, or may hold Claims against or Interests in the Debtors . . .are permanently enjoined, on and after the Effective Date, solely with respect to any Claims, Interests, and Causes of Action that will be or are extinguished, discharged, or released pursuant to the Plan from (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against or affecting [] Reorganized RMS.

(*Id*. § 10.5.)  Even assuming that Plaintiffs' claims are not addressed by Section 4.6, they are clearly "waived, released, and discharged" by Section 10.3 (and 11 U.S.C. § 1141(d)), which release claims not otherwise addressed in the Plan.  (*Id*. § 10.3(a).)  Moreover, Section 10.5 enjoins holders of claims released under the Plan from "continuing in any matter . . . any suit . . . of any kind," and thus enjoins Plaintiffs from pursuing the instant suit.[11]

---

[9] The Effective Date of the Plan was September 30, 2019.  (*See* Dkt. 30, at 2.)

[10] "'Confirmation Order'" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code."  (Plan, Dkt. 30-1, § 1.34.)

[11] The Bankruptcy Court has well-established authority to enjoin suits against reorganized debtors.  *See, e.g.*, *In re SquareTwo Fin. Servs. Corp.*, No. 17-10659 (JLG), 2017 WL 4012818, at *2, 4 (Bankr. S.D.N.Y. Sept. 11, 2017) ("It is well settled that a Bankruptcy Court retains

## CONCLUSION

Although the Rambert family's circumstances appear to be unfortunate, the Court is compelled to find, for the reasons discussed above, that Plaintiffs' claims are barred by the Plan and must be dismissed.[12]  Defendant's motion to dismiss is granted in its entirety.  The Clerk of Court is respectfully requested to enter judgment and close this case.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated:  May 27, 2020
            Brooklyn, New York

---

jurisdiction post-confirmation to interpret and enforce its orders.") (citing *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009)).

[12] As RMS's counsel advised Plaintiffs and the Court during the May 26, 2020 oral argument, a reserve fund was established as part of the Plan to compensate consumer creditors, based on assessments of their claims by the consumer representative.  The Court makes no finding as to whether the Plaintiffs have a right to seek recovery under the Plan in Bankruptcy Court.